UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN RAMON RODRIGUEZ ALBA,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>Respondents. | Case No.: 26cv561-LL-DEB<br><br>**ORDER GRANTING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 5]** |

Presently before the Court is Petitioner Rodriguez Alba's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 5). Also before the Court is Respondents' Return in Opposition to the Habeas Petition ("Response," ECF No. 10). Petitioner also filed a Traverse. ECF No. 11.  For the reasons set forth below, the Court **GRANTS** in part Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 5).

## BACKGROUND

Petitioner, a Cuban national, came to the United States on January 21, 2024 through a CBP One Appointment. Pet. at 2. On the same day, Petitioner was given humanitarian parole and he was released into the United States. *Id.* His work authorization documents are marked "C11," which indicates he received a form of humanitarian parole. *Id.* On January 29, 2025, Petitioner was pulled over by highway patrol for an alleged traffic

1

violation and taken into custody. *Id.* at 3. Petitioner was not given any reason why his parole was being revoked or a chance to be heard. *Id.* (citing Exhibit A, Decl. of Mr. Rodriguez Alba, ¶¶ 4-5). Accordingly, Petitioner argues that his detention violates Due Process and the Administrative Procedures Act ("APA"). *Id.* at 3-11.

Respondents in their Return state that "Petitioner's claims are jurisdictionally barred." Return at 2. Respondents also argue that because Petitioner's parole expired on April 6, 2025, he is subject to mandatory detention under § 1225(b). Return at 2-6 (citing Exhibit 1). Petitioner alleges that he is entitled to release because the government violated his due process rights by revoking his parole without notice or an opportunity to be heard. Traverse at 6. Petitioner also argues that the I-94 is not specific to noncitizens paroled under the humanitarian parole statute, and that the alleged April 6, 2025 expiration date is unlikely to bind humanitarian paroles who are governed under the parole framework. Id. In sum, Petitioner argues that Petitioner's parole thus remains active. *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

/ / /

/ / /

2

26cv561-LL-DEB

**DISCUSSION**

**1.       Jurisdiction Under 8 U.S.C. § 1252(g)**

Respondents argue that Petitioner's claims are jurisdictionally barred under 8 U.S.C. § 1252(g). Section 1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

The Court finds § 1252(g) does not bar its jurisdiction over Petitioner's claims. The Supreme Court has explained that § 1252(g) does not bar jurisdiction for the "universe of deportation claims" but instead "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *2 (9th Cir. Aug. 27, 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). The Supreme Court later reiterated this narrow application of § 1252(g): "We did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). Petitioner is not challenging the commencement of removal proceedings but is instead claiming a lack of legal authority to detain him for a prolonged time without a bond hearing during proceedings. *See Ibarra-Perez*, 2025 WL 2461663, at *2 (noting that a claim based on a lack of legal authority to execute a removal order due to a violation of a court order, the Constitution, INA, or international law, does not challenge the decision or action to execute a removal order). Therefore, § 1252(g) does not limit the Court's jurisdiction in this matter.

///

26cv561-LL-DEB

## 2.      Revocation of Parole

Petitioner argues that revocation of his parole, without reasoning or an opportunity to be heard denied him of his due process rights. Pet. at 8.  The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, No. 25-cv-5632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi*, 2025 WL 2084921, at *3 (citing *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents contend that "[i]t is the government's position that Petitioner is subject to mandatory detention under § 1225(b)." Response at 4-6. Respondents contend that "[w]hile Petitioner was previously released from custody on parole, his parole was terminated and, in any event, has expired. After Petitioner was detained on January 31, 2025, he was served with a Notice to Appear, which served to terminate his parole status."

26cv561-LL-DEB

*Id*. at 4-5. The Court disagrees. On January 30, 2024, Petitioner was granted humanitarian parole and was released into the United States. Pet. at 2. At the time of Petitioner's release, he was determined to not be a danger to the community or a flight risk. *Id*. Petitioner has complied with the conditions of his parole, but in January 2025, ICE arrested him. Pet. at 2-3; *see also* ECF No. 5-1, Decl. of Rodriguez Alba ¶ 3. Petitioner has a protected liberty interest in remaining out of custody. *See, e.g., Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).  To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors.  *See Matthews*, 424 U.S. at 335.  Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights.  First, as discussed above, Petitioner has

26cv561-LL-DEB

a significant liberty interest in remaining out of custody in light of his initial release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in continuing to work and continuing the process of seeking asylum. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason and without an opportunity to be heard. Since DHS's initial determination that Petitioner should be released because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). There is nothing in the record to show that Petitioner has a criminal record, nor has he been arrested or otherwise in criminal trouble. *See* docket. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia*, 280 F. Supp. 3d at 1760. "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Id.*

Respondents, failing to address Petitioner's Due Process argument in their response, do not point to any material circumstances that have changed that would warrant revocation of his parole. *See generally* Response. "Where, as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 2025 WL 2084921, at *5 (quoting *Singh v. Andrews*, No. 25-cv-801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)).

26cv561-LL-DEB

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 2025 WL 2084921, at \*5; *Matute*, 2025 WL 2817795, at \*6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Response.

Therefore, because Respondents revoked Petitioner's parole in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Alegria Palma v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. at 14 (S.D. Cal. Aug. 11, 2025) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Navarro Sanchez*, 2025 WL 2770629, at \*5 (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).[1]

Regarding Respondents' argument that Petitioner's parole is expired, as an initial matter, the Court notes that Respondents have discrepant dates in their Response as to what date the parole expired (April 6, 2025 or August 28, 2025). *See* Return at 2 (citing Exhibit 1 at 2). Petitioner disputes that his parole has expired. Traverse at 2-3, 5. Even assuming arguendo that his parole has expired, the Court disagrees with Respondent that an expiration of parole automatically extinguishes any due process claim. Courts have repeatedly held that liberty interests do not expire when parole does. *See, e.g., Osartin v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3612-JES-MSB, 2026 WL 280077, at \*2 (S.D.

---

[1] The Court need not address Petitioner's claim arising under the APA because the Petition can be resolved on due process grounds.  However, the Court notes that other courts have found violations of the APA based on similar grounds.  *See, e.g.*, *Navarro Sanchez*, 2025 WL 2770629, at \*4 (finding revocation of petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation); *Noori*, 2025 WL 2800149, at \*3 ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA.").

26cv561-LL-DEB

Cal. Feb. 3, 2026). "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). Rejecting similar arguments from the government, the court held that "this private interest did not expire along with Petitioner's parole agreement. Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process." *Id.*; *see also Rodriguez Cabrera v. Mattos*, No. 2:25-CV-01551-RFB-EJY, 2025 WL 3072687, at *11 (D. Nev. Nov. 3, 2025) ("Petitioner has a fundamental interest in freedom from physical confinement, and that liberty interest is particularly strong given his initial release from detention in 2022, and the fact that Respondents did not seek his return to custody upon the expiration of his parole in December 2022, or in the three years since."); *Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) ("[P]etitioner's liberty interest did not expire along with his parole.").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

26cv561-LL-DEB

## CONCLUSION

Based on the foregoing, the Court **GRANTS** in part Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 5). The Court further **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting release. The Court **ORDERS**, prior to any revocation of Petitioner's parole or re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for the revocation or his re-detention and a hearing before a neutral decision maker to determine whether detention is warranted. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[2]  The Clerk of Court **SHALL CLOSE** the case.

    **IT IS SO ORDERED**.

Dated:  March 19, 2026

_____
Honorable Linda Lopez
United States District Judge

---

[2] This relief has been granted in similar matters.  *See, e.g.*, *Matute*, 2025 WL 2817795, at *8; *Pinchi*, 2025 WL 2084921, at *5; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).

26cv561-LL-DEB